NEW YORK STATE TEACHERS' RE-
TIREMENT SYSTEM, Plaintiff,

v.

DEPARTMENT OF HOUSING AND UR-
BAN DEVELOPMENT, FEDERAL
HOUSING ADMINISTRATION, De-
fendant.

No. 66 Civ. 405.

United States District Court
N. D. New York.

Sept. 20, 1968.

Francis H. Trombly, Albany, N. Y., for plaintiff.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., for defendant (James P. Shanahan, Asst. U. S. Atty., of counsel).

## OPINION

RYAN, District Judge (by assignment).

In this action, plaintiff seeks a judgment declaring that it is entitled to additional debentures in the amount of $124,-104. The question is whether a fund of $124,104 presently held by plaintiff under an agreement with its guarantors was required to be assigned to Federal Housing Administration (FHA) under 12 U.S.C. § 1713(g). If such funds should have been assigned, plaintiff's motion must be denied; if FHA was not entitled to the fund, FHA must issue an additional $124,104 of debentures.

The parties have moved for summary judgment under Rule 56(a), F.R.Civ.P. The motions come to me by assignment during my designation to sit in the Northern District of New York. I have concluded that the defendant's motion must be granted.

Defendant in its answer challenged the jurisdiction of the Court and alleged that the named defendant—Department of Housing and Urban Development-Federal Housing Administration—is not subject

to suit. (Taft Hotel Corp. v. Housing and Home Finance Agency, 262 F.2d 307 (C.A.2, 1958), cert. denied, 359 U.S. 967, 79 S.Ct. 880, 3 L.Ed.2d 835.) After a hearing before me, the parties stipulated that the Secretary of Housing and Urban Development, Robert C. Weaver, be named as a defendant and that he be bound by all proceedings heretofore had or which may be taken herein, including the pending motions for summary judgment by plaintiff and defendant. The stipulation also provided for discontinuance as to the defendant originally named.

Although the attorneys state that no factual issue is presented, efforts to secure a statement of undisputed facts have not met with success. I find no factual issue raised by the papers before me.

This action arises out of a commitment for insurance of a mortgage loan in the sum of $12,410,000.00 issued on January 18, 1963 by the then Federal Housing Commissioner to City-Wide Mortgage Company of Phoenix, Arizona, under the provisions of Section 231 of the National Housing Act (12 U.S.C. Sec. 1701 et seq.) and Regulations thereunder. The commitment was assigned FHA Project No. 139–38006–NP. The commitment disclosed that the sponsor of the project was the University of Arizona Foundation and that the proposed mortgagor would be Retirement Foundation, Inc.

Following conferences between City-Wide, the Arizona Foundation, and plaintiff's representatives, plaintiff made a formal offer on March 27, 1963 to grant the loan, which offer was accepted by Retirement Foundation. The offer of plaintiff was conditioned upon the execution by Retirement Foundation, the mortgagor, of an agreement providing that a fund of $124,104.00 be deposited with the mortgagee, National Commercial Bank and Trust Company, and held for a period of two years from the date of final completion and endorsement of the note for insurance by FHA, with the provision that, if within that time there be no default necessitating the mortgagee's assigning the mortgage to FHA

under the provisions of Title 12, U.S.C., Section 1713(g), in exchange for debentures in an amount equivalent to 99 per per centum of the unpaid amount of the mortgage principal obligation, the funds were to be paid over by the mortgagee to the mortgagor; in the event of default and assignment of the mortgage to FHA, it was agreed that the mortgagee "shall retain the 1% deposit hereunder as damages and as though said sum were initially charged as a discount for the making of this loan." Plaintiff's conditions were met and such an agreement was signed on April 18, 1963. This deposit was to be made by mortgagor and guaranteed by the general contractors as guarantors, as follows:

"1. Mortgagor agrees to deposit with Mortgagee out of 'Surplus Cash' as defined in Rider 'A' hereto annexed and made a part hereof the sum on ONE HUNDRED TWENTY-FOUR THOUSAND ONE HUNDRED FOUR ($124,104.00) DOLLARS at time of final endorsement of the note made and executed by Mortgagor to Mortgagee dated April 18, 1963.

2. In the event the surplus cash, if any, available at time of final endorsement does not equal ONE HUNDRED TWENTY-FOUR THOUSAND ONE HUNDRED FOUR ($124,104.00) DOLLARS Guarantors will pay to Mortgagee at time of final endorsement the difference between that sum and payment made by Mortgagor under the terms of Paragraph 1 hereof, or if no payment is forthcoming under the terms of Paragraph 1, then Guarantors will pay to Mortgagee the entire sum of ONE HUNDRED TWENTY-FOUR THOUSAND ONE HUNDRED FOUR ($124,104.00) DOLLARS.

* * * * * * *

5. If the Mortgagor defaults within the two-year period and an assignment by the Mortgagee is required which results in a 1% discount or loss to the Mortgagee by virtue of debentures being issued in an amount equal to the Mortgage debt less 1%, then the Mortgagee shall retain the 1% deposit here-

under as damages and as though said sum were initially charged as a discount for the making of this loan."

Plaintiff had entered into an agreement with the National Commercial Bank and Trust Company of Albany to facilitate the advance of building loan funds as construction progressed, whereby National Commercial agreed to act as mortgagee during the construction period and to service the building loan to the end that plaintiff would receive at the end of the construction a fully insured loan. The formal closing of the loan was concluded by initial endorsement of the mortgage note for insurance by the FHA representatives on April 19, 1963. At the closing, a so-called Mortgagee's Certificate was delivered to the FHA and attached to it was a copy of the agreement dated April 18, 1963, the execution of which plaintiff had insisted upon as a condition of its offer to make the mortgage loan. At this closing, the FHA commitment for insurance of advances was assigned by City-Wide to National Commercial. The mortgage was assigned on July 1, 1965 to plaintiff.

Following the mortgage closing of April 19, 1963, construction on the project was begun and installment advances were made under the mortgage based upon completion of the construction. In February, 1964, Maxon requested permission to enter into a joint-venture with the Hankin-Conkey Construction Company, who then required Maxon to procure a release of Maxon's and Tucson's liability on the guaranty provided for in the agreement of April 18, 1963. This was done by the execution of an agreement on February 17, 1964 made between Maxon and Tucson Green Valley, the guarantors, and National Commercial, the mortgagee. This later agreement incorporated by reference and modified the April 18, 1963 agreement and, under it, Maxon deposited with National Commercial $124,104.00 in exchange for the guarantors' discharge under the earlier agreement. Paragraph (c) of this second agreement provides:

"c. It is understood and agreed by the parties hereto that the deposit provided herein is for the purpose of guaranteeing the deposit of funds required of the Mortgagor as provided in Paragraph 1 of Exhibit "Z" attached hereto."

Paragraph (f) provides:

"f. If the Mortgagor defaults within the two-year period and an assignment by the Mortgagee is required which results in a 1% discount or loss to the Mortgagee by virtue of debentures being issued in an amount equal to the mortgage debt less 1%, then the Mortgagee shall retain the deposit held hereunder as damages and as though said sum were initially charged as a discount for making of this loan."

The final advance on the building loan agreement was made on June 28, 1965 and the Federal Housing Commissioner endorsed the note for the full FHA insurance for the moneys advanced without any deduction for the $124,104.00 deposit which had been made on February 17, 1964. Notice of default was given the FHA on October 27, 1965 and on November 15, 1965 the plaintiff notified the FHA that it elected to assign the mortgage to FHA and filed its claim for settlement under the FHA insurance commitment.

Upon plaintiff's failure to assign or pay over to the FHA (as required by 12 U.S.C. § 1713(g)), the deposit which plaintiff had received from Maxon Construction Company, $124,104.00, was withheld from the amount of insurance proceeds paid over to plaintiff by the FHA.

The sole question of law presented on these facts is whether the $124,104.00 received by plaintiff under the agreement it had with the guarantors is required to be assigned to FHA under 12 U.S.C. Sec. 1713(g) to be applied against the principal of the mortgage loan. I have concluded that this fund is required to be assigned to FHA under Section 1713(g) (1), (g) (2), (g) (3), (g) (5) or (g) (6), as a principal payment on the mortgage loan.

Although counsel state that these statutory provisions have never been judi-

cially construed, the defendant submits that they consistently have been interpreted by FHA as applying to all manner of agreements designed to permit a mortgagee to avoid the 1% statutory discount. Such a construction is compelled by the very broad wording of the statute. Defendant properly argues that "The agreement for the deposit of the $124,104 was an important part of the entire transaction. Without it, the Bank would never have made the loan; without it, the Bank would not have released the Guarantor. At the same time, the Bank had no absolute right to retain the fund—the fund represented the Bank's claim against both the mortgagor and the Guarantor."

I make the following conclusions of law.

 1. This suit is maintainable against the Secretary of Housing and Urban Development, Robert C. Weaver, 12 U.S.C. § 1702.

2. The mortgage herein was insured by the Federal Housing Administration pursuant to 12 U.S.C. § 1713.

3. The deposit collected by the plaintiff-mortgagee upon default of the mortgagor constituted "cash or property held by the mortgagee, or to which it (was) entitled, as deposits made for the account of the mortgagor and which (has) not been applied in reduction of the principal of the mortgage indebtedness," within the meaning of 12 U.S.C. § 1713(g).

4. The deposit collected by the plaintiff-mortgagee upon default of the mortgagor constituted a "claim * * * of the mortgagee against the mortgagor or [an]other * * * arising out of the mortgage transactions," within the meaning of 12 U.S.C. § 1713(g).

5. The deposit collected by the plaintiff-mortgagee upon default of the mortgagor constituted a "right * * * and interest * * * arising under the mortgage * * * in default," within the meaning of 12 U.S.C. § 1713(g).

6. Plaintiff failed to comply with the requirement of 12 U.S.C. § 1713

(g) that the deposit be assigned to defendant before payment could be made to plaintiff of 99% of the insurance proceeds.

7. Defendant lawfully withheld the amount of the deposit, which plaintiff failed to assign to it, from the final settlement of insurance proceeds paid to plaintiff.

8. Defendant is not liable to plaintiff for the sum sought herein and defendant is entitled to judgment in accordance therewith.

Let an appropriate judgment be submitted on notice of settlement.