**STATE STREET BANK AND TRUST COMPANY**

v.

**The UNITED STATES.**

**No. 366–78.**

United States Court of Claims.

Aug. 19, 1981.

Harry H. Caviston, Boston, Mass., attorney of record, for plaintiff. Caviston & McArdle, Boston, Mass., of counsel.

Lenore C. Garon, Washington, D. C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant.

Before COWEN, Senior Judge, and KUNZIG and BENNETT, Judges.

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

COWEN, Senior Judge:

■ Plaintiff, State Street Bank and Trust Company, was an insured mortgagee under the mortgagor insurance program of the National Housing Act, 12 U.S.C. § 1715*l* (d)(4). Following default by the mortgagor and assignment of the mortgage to the Department of Housing and Urban Development (HUD) on November 5, 1976, HUD instructed plaintiff to offset its losses by the amount of an irrevocable and unconditional letter of credit in the amount of $221,000, which the plaintiff obtained from the mortgagor prior to the disbursement of any insured funds. Under the regulations, plaintiff was required to submit the necessary documentation of its losses within 45 days after the assignment to HUD. Plaintiff failed to do this, or to submit a request for an extension of time, and as a consequence, HUD refused to pay plaintiff interest on its claims beyond the 45th day after the assignment of the mortgage. Plaintiff claims interest on the disallowed $221,000;

interest on $113,850 at 6 percent from December 20, 1976 to May 27, 1977, the date the payment of $113,850 was received from HUD, and interest on $240,106.80 of other disallowed items at 6 percent per annum from March 1, 1976 to date of payment.[1] HUD also declined to reimburse plaintiff for a hazard insurance premium amounting to $5,716.80, on the property, paid after the date of the assignment. Plaintiff brought this action to recover the $221,000, the claimed three items of interest, and the insurance premium of $5,716.80.

The case has been submitted to the court on cross motions for summary judgment, together with a stipulation of facts. After considering the stipulation, the motions and briefs of the parties, and after hearing oral argument, we conclude that plaintiff is not entitled to recover on its claim of $221,000 or on any of the three interest claims. However, defendant now agrees that plaintiff is entitled to be reimbursed for the hazard insurance premium which HUD disallowed, and it follows that judgment should be entered in favor of plaintiff in that amount.

### I.

On August 28, 1973, the Secretary of HUD issued a Commitment for Insurance of Advances to First Service Mortgage Corporation whereby HUD was obligated to insure the mortgage loan on a multi-family housing project known as Forest Hills Apartments. The mortgagors were Leo E. Wolfe and Bernard P. Rome, trustees of the Forest Hills Realty Trust. After the commitment was issued, First Service Mortgage Corporation assigned its interest to plaintiff.

On November 20, 1973, plaintiff executed a mortgage certificate which certified that the mortgagee had collected certain amounts as required by the loan documents and regulations. Plaintiff also certified that it had a standby commitment from the Federal National Mortgage Association

---

1. In its petition, plaintiff also claimed $13,390 for "Operating Deficit Escrow." but omitted any reference to this claim in its motion for summary judgment. Therefore, we deem that this claim has been abandoned.

(FNMA) to purchase the loan at a financing charge or discount of $221,000, and that a letter of credit for the account of the mortgagor in the amount of $221,000 had been obtained to cover the charge or discount. The discount, which is sometimes called a premium financing fee, represents a discount paid to FNMA which will purchase the mortgage from the initial lender after completion of the project and payment of all creditors other than the lender. Under the regulations, the mortgagor is required to deposit the money in an escrow account which is held by the initial lender during the period of construction. 24 C.F.R. § 207.19(c)(3). On November 14, 1973, an irrevocable letter of credit in the amount of $221,000, drawn on the First National Bank of Boston, for the account of Leo E. Wolfe and Bernard P. Rome, as trustees, was delivered to plaintiff. On November 20, 1973, Leo E. Wolfe and Bernard P. Rome, individually and as trustees of Forest Hills Realty Trust, executed a written agreement whereby they agreed to compensate plaintiff for any "additional charges, fees or expenses" incurred in selling the loan to FNMA or for "financial loss" incurred in the event that the loan for any reason is turned over to the Federal Housing Administration (FHA).

In January 1976, the mortgagors defaulted under the obligation on the project note and mortgage. On November 5, 1976, the note, mortgage and other loan agreements were assigned to the Secretary of HUD.

Plaintiff's claim under the Commitment for Insurance of Advances was for $1,165,-646.76. HUD paid the principal sum of $939,436.90 as follows: On November 10, 1976, HUD paid plaintiff a partial settlement of the claim in the principal amount of $816,100, plus interest computed from March 1, 1976, for a total of $849,809.50. On May 27, 1977, in final settlement of the claim, HUD made another payment to plaintiff in the principal amount of $113,-850, plus interest computed from March 1,

1976 to December 20, 1976, for a total of $119,337.78. On January 14, 1978, HUD made a further payment of $9,486.90 for interest and penalties on real estate taxes which had previously been disallowed.

Some time subsequent to the assignment of the mortgage, a temporary restraining order was brought against plaintiff and the issuer of the $221,000 letter of credit to prevent honoring of that letter of credit.[2]

## II.

■ When plaintiff submitted its claim to HUD under the Commitment of Insurance, HUD deducted the $221,000 held by plaintiff as a "premium financing fee" and it is this deduction which presents the first issue to be decided.

The mortgage insurance provided by the National Housing Act is financed by the General Insurance Fund created by 12 U.S.C. § 1735c. This is a revolving mortgage insurance fund which was intended by Congress to be self-sustaining and actuarilly sound. 12 U.S.C. §§ 1735c(c), (d). See House Rep.No.93–1626, 93rd Cong., 2d Sess. at 15. In order to provide mortgage insurance and preserve the solvency of the General Insurance Fund, the Secretary of HUD is authorized to condition mortgage insurance upon "such terms and conditions as [he] may prescribe." 12 U.S.C. § 1715*l*(b). Pursuant to this authority, the Secretary has promulgated regulations which require the mortgagee to certify that the mortgagor has deposited all fees for premium financing commitments in the form of cash or unconditional irrevocable letters of credit. 24 C.F.R. §§ 207.19(c)(3), (7). This regulation also provides that in the event the demand of the letter of credit is not immediately met, the mortgagee shall forthwith provide cash equivalent to the "undrawn balance thereunder." The mortgagee is also required by the commitment of insurance to certify that it has sufficient funds to meet any operating deficiency of the project for the first year of operation, and

---

2. HUD is not a party to the action involving the restraining order. At oral argument, counsel for both parties advised the court that they had no other information at that time regarding the status of this proceeding.

plaintiff made this certification. HUD regulation 24 C.F.R. § 207.19(b)(7) permits but it does not require a mortgagee to accept an unconditional letter of credit in lieu of any cash deposit.

Upon default by the mortgagor, the mortgagee may elect either to assign the mortgage to HUD or to foreclose and convey title of the property to HUD. 12 U.S.C. § 1713(g), 24 C.F.R. § 207.258(a). When the mortgage is assigned to HUD as was done in this case, the regulations provide that any cash held by the mortgagee for the account of the mortgagor, including "the amount of any undrawn balance under a letter of credit used in lieu of a cash deposit," shall be retained by the mortgagee or delivered to the Commissioner in accordance with instructions issued by him at the time the insurance claim is filed. 24 C.F.R. § 207.258(b)(5)(iv). If the Commissioner of HUD instructs the mortgagee to retain the balance due under any letter of credit, that sum is deducted from the mortgagee's insurance claim. 24 C.F.R. § 207.259(b)(2)(iii).

There is no doubt that the regulations authorized HUD to deduct the $221,000 from the plaintiff's insurance claim. Moreover, these regulations are not only consistent with the National Housing Act, but are mandated by it. 12 U.S.C. § 1713(g) provides in pertinent part that after default by the mortgagor, the mortgagee shall be entitled to receive the benefits of the insurance—

* * * upon assignment, transfer, and delivery to the Secretary, within a period and in accordance with rules and regulations to be prescribed by the Secretary of * * * (5) any cash or property held by the mortgagee, or to which it is entitled, as deposits made for the account of the mortgagor and which have not been applied in reduction of the principal of the mortgage indebtedness; * * *.

It has been established by an affidavit submitted with defendant's motion that the regulations are both reasonable and necessary to effectuate the Congressional intent that the General Insurance Fund is maintained in a solvent condition. The deduction of letters of credit from the mortgagee's insurance claim permits the Commissioner to reduce the demand on the General Insurance Fund. In the absence of that right, the drain on the Fund would be increased to the detriment of the insurance programs which are financed thereby.

A regulation similar in all material respects to the one utilized by HUD in this case was upheld by this court in *Allied Concord Financial Corp. v. United States*, 190 Ct.Cl. 396, 420 F.2d 733 (1970). There the court held that in view of the provisions of the regulations, FHA was entitled to deduct from the mortgagee's insurance claim an amount which the mortgagee had collected to cover an anticipated 1½ percent discount on the sale of the mortgagor's note to FNMA.

Plaintiff has cited no authority which supports its position, and we have found none. Plaintiff argues that the only purpose of the letter of credit was to cover the discount which was to be paid to FNMA upon its purchase of the mortgage from the lender. Since the mortgage was not purchased by FNMA in this case, plaintiff contends that in view of that fact and the indemnification agreement between plaintiff and the mortgagors, the $221,000 letter of credit was intended to reimburse plaintiff for any financial loss it incurred in the event the mortgage was assigned to HUD. The defendant correctly points out that the indemnification agreement does not contain a specific reference to the letter of credit. Assuming, however, that it is broad enough to cover the letter of credit, it is obvious that any agreement entered into between plaintiff and the mortgagors, which is contrary to the regulations and to which HUD is not a party, would not be valid or binding on HUD. Moreover, even if the letter of credit was intended by plaintiff and the mortgagors to indemnify plaintiff against any losses, that intention would in no way affect HUD's right to deduct the amount of the credit from plaintiff's insurance claim. This is the explicit holding in *New York Teachers' Retirement System v. Department of Housing and Urban Development,*

*Federal Housing Administration,* 290 F.Supp. 346 (N.D.N.Y.1968). In that case, the mortgagee required the mortgagor to deposit a substantial fund for the specific purpose of compensating the mortgagee for losses incurred by it in the event of a default by the mortgagor and an assignment to FHA. Notwithstanding the specific purpose for which the sum was deposited, the court held that 12 U.S.C. § 1713(g) required the mortgagee to assign the fund deposited with it to the FHA, and therefore, that FHA lawfully withheld the amount of the deposit (which the mortgagee failed to assign to FHA) from the final settlement of the insurance proceeds paid to the mortgagee. Since HUD's deduction of the $221,-000 was in compliance with the applicable law and regulations, we conclude that plaintiff's claim to the $221,000 is without merit.

### III.

The Fiscal Instructions in effect in this instance required the mortgagee to submit the fiscal data in support of the claim for insurance benefits to HUD within 45 days after the assignment of the mortgage was recorded. This requirement is also set forth in 24 C.F.R. § 207.258(b)(4). Mortgagees who comply with all the requirements in a timely fashion receive interest on their claims from the date of the assignment to the date of payment. The instructions also provide that in the event the mortgagee needs additional time, a request for an extension should be submitted to HUD with an explanation of the reasons for the delay. If the required actions are taken within the extended time, the interest allowance will be computed to the day of settlement.

The regulations, 24 C.F.R. § 207.-259(b)(1)(iii), state that when the mortgagee fails to meet the requirements within the specified 45-day period "and in a manner satisfactory to the Commissioner (or within such further time as the Commissioner may approve in writing), the interest allowance in such cash payment shall be computed only to the date on which the particular required action should have been taken or to which it was extended."

The note, mortgage and other loan documents were assigned to HUD on November 5, 1976, and plaintiff was required to submit the specified documents on December 20, 1976. Plaintiff did not submit the required fiscal data until January 3, 1977, and it is undisputed that it made no request for an extension of time either before or after the expiration of the 45-day period.

The instructions to mortgagees required payment of taxes "that will become delinquent within 45 days after recording of the assignment of the mortgage" to HUD. The fiscal instructions also stated that taxes which will become delinquent within 45 days after the assignment has been recorded, shall be paid by the mortgagee and the amount shall be included in the mortgagee's claim for insurance benefits. At the time of the assignment to HUD there was due the city of Boston for the November 1, 1976 real estate tax bill, the sum of $40,808.33. The mortgagee obtained a real estate tax abatement certificate from the mortgagor and was thereby able to obtain a credit of $18,696 on the tax bill, and this credit reduced plaintiff's claim to HUD for reimbursable cash disbursements.

Plaintiff asserts that it was acting in good faith in attempting to mitigate damages for HUD; that is was unable to obtain the abatement certificate within the required 45-day period, and therefore, it failed to apply for a written extension. Plaintiff also argues that the regulations do not contain a specific requirement that the request for extension must be made before the expiration of the 45-day period. Plaintiff further declares that under the applicable regulations, it could have paid the full amount of the tax bill and have been reimbursed by HUD for the full amount paid, without reduction for the amount of the abatement. In view of these circumstances, plaintiff maintains that it was equitably entitled to the interest claimed and that HUD's refusal to pay the interest was an abuse of discretion which entitled plaintiff to recover.

Defendant does not agree with plaintiff that the delay beyond the 45 days was necessary. The abatement certification shows that the amount abated could be credited to the unpaid current bill, or in the event the bill was paid, a refund would be made. Thus, defendant argues that since the refund could have been received after the tax was paid, HUD might have chosen to obtain the certificate and seek the refund itself, rather than pay interest on the entire amount of plaintiff's claim. Defendant also points out that although the regulation does not in express terms require the request for an extension of time to be made before the expiration of the 45-day period, plaintiff never sought an extension either before or after that time.

We find it unnecessary to resolve the dispute regarding the tax abatement, because it has not been shown that in failing to pay the claimed interest, defendant abused its discretion. We find that there was a rational basis for the requirement that the fiscal data be provided within the 45-day period unless a time extension is requested and granted. The purpose of the requirement is to encourage expeditious assignments to HUD and to protect the General Insurance Fund by limiting the amount of interest on insurance claims which the fund is obligated to pay. By requiring requests for an extension of time with an explanation of reasons for the delay, HUD is able to prevent unnecessary extensions which increase the amount of its interest obligation. HUD acted in accordance with the regulations and we conclude that its refusal to pay the interest claimed by plaintiff was not such a gross abuse of discretion that entitles plaintiff to recover.

## IV.

In November 1976, plaintiff agreed to pay the mortgagor's insurance carrier the sum of $5,716.80, which was the balance due as an insurance premium for hazard insurance covering the period from November 28, 1976 to November 28, 1977. Plaintiff paid the premium on January 5, 1977. Under 24 C.F.R. § 207.258(b)(4), the insurance policy is one of the documents which plaintiff was required to submit to HUD within the 45-day period after the assignment. On December 6, 1978, plaintiff's vice-president delivered the policy to the office of the general counsel of HUD. Under the provisions of the applicable regulation, 24 C.F.R. § 207.259(b)(1)(i), plaintiff is entitled to reimbursement for the insurance premium which it paid. Defendant has now acknowledged that HUD erroneously failed to reimburse plaintiff for the premium. Accordingly, plaintiff is entitled to judgment for the $5,716.80.

## CONCLUSION

With respect to plaintiff's claim for the $221,000 covered by the letter of credit and its three claims for interest, plaintiff's motion for summary judgment is denied; defendant's cross-motion is granted, and the petition is dismissed. In view of defendant's concession, plaintiff's motion for summary judgment with respect to the claim for the paid insurance premium is granted and judgment is entered for plaintiff in the sum of $5,716.80.